UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KATHLEEN ANASTOS,<br><br>        Plaintiff,<br><br>        v.<br><br>BOSTON MEDICAL CENTER,<br><br>        Defendant. | Civil Action No. 22-11971 |

**MEMORANDUM OF DECISION**

January 7, 2025

JOUN, D.J.

This case arises out of Kathleen Anastos' ("Ms. Anastos" or "Plaintiff") allegations of religious discrimination against Boston Medical Center ("BMC" or Defendant"). After Ms. Anastos, a registered nurse ("RN"), was denied a religious exception to BMC's COVID-19 vaccination requirement, she filed the operative Complaint alleging she was denied the exception due to her religious beliefs. Now before the Court are Defendant's Motion for Summary Judgment and Plaintiff's Motion to Strike. [Docs. No. 28, 31]. For the reasons below, Plaintiff's Motion is DENIED and Defendant's Motion is GRANTED.

**I.    BACKGROUND**

    **A.    Facts[1]**

---

[1] Plaintiff did not respond to Defendant's Statement of Facts. Instead, Plaintiff submitted a Statement of Disputed Material Facts, see Doc. No. 32-1.

1

Ms. Anastos was employed as an RN at BMC, a hospital in the South End of Boston. [Doc. No. 29 at ¶¶ 1-2]. From November 2018 to October 2021, she worked at BMC's Endoscopy Unit (the "Unit"), where she provided patient care and assisted in upper gastrointestinal endoscopies and colonoscopies. [*Id.* at ¶¶ 3, 5]. In this role, Ms. Anastos was assigned to monitor and provide care for patients in pre-procedure and post-procedure bays or assist in the procedure rooms. [*Id*. at ¶ 5].

Depending on her assignment, Ms. Anastos' duties included caring for about eighty (80) patients per shift in the pre-procedure area, fifteen (15) to twenty (20) patients per shift in the post-procedure area, or about ten (10) patients per shift in the procedure room. [*Id.* at ¶ 6]. While working in a procedure room, Ms. Anastos assisted physicians in conducting endoscopy procedures like helping to remove polyps, positioning the patient, monitoring the patient's vitals, administering intravenous fluids and medications to the patient, and maintaining the patient's airway. [*Id.* at ¶ 7]. While working in the pre-procedure area, Ms. Anastos interviewed patients to obtain medical backgrounds, document vital signs, and administer intravenous fluids. [*Id.* at ¶ 8]. Finally, while working the post-procedure area, Ms. Anastos monitored patient's vital signs and assisted patients with discharge. [*Id.*].

Between January 31, 2020, and July 31, 2021, BMC treated 3,281 patients for COVID-19, of which 226 patients died from COVID-19 or COVID-19 related complications at BMC. [*Id.* at ¶ 10]. Between January 2020 to July 31, 2021, several hundred BMC staff members reported contracting COVID-19. [*Id.* at ¶ 10]. The Unit closed three times from April 4, 2020, to May 10, 2020, from December 15, 2020, to February 3, 2021, and from January 10, 2022, to February 17, 2022. [*Id.* at ¶ 11].

In January 2021, BMC began offering COVID-19 vaccines to employees. [*Id*. at ¶ 14]. On July 13, 2021, BMC announced that it would require all employees to be vaccinated against COVID-19. [*Id.* at ¶ 15]. In August 2021, BMC implemented an Immunization Policy (the "Policy") that required all employees to be vaccinated against COVID-19. [*Id.* at ¶ 16].

BMC relied on recommendations of the Center for Disease Control ("CDC") and its own experience in the pandemic when it determined that requiring vaccination was the best way to reduce the risk of transmission among healthcare workers and between healthcare workers and patients. [*Id.* at ¶ 17]. At the time BMC implemented the Policy, the CDC recommended vaccination as the best way to prevent COVID-19 infection and transmission of the virus. [*Id*. at ¶ 18]. Again, based on the recommendations from the CDC and its experience, BMC determined that the increased risk of transmission within the hospital among healthcare providers and patients would impair the hospital's ability to provide adequate care to patients, increase the risk of legal liability, and taint the reputation of the hospital. [*Id*. at ¶ 38].

On August 18, 2021, Ms. Anastos, who is a Roman Catholic, submitted a religious exemption request from the COVID-19 vaccination, stating she believed "[a]bortion is an abomination, an evil violating moral law" …and as such, it was her "duty to reject any medical treatment using the cells procured from abortion either in development or testing." [*Id.* at ¶¶ 21-22]. Ms. Anastos also stated she is "created in God's image and likeness" and [i]njecting a substance that is a blueprint for the cells in my body to produce foreign spike proteins changes my body in way unintended by my Creator." [*Id.* at ¶ 22]. Ms. Anastos testified her opposition to vaccination because of its alleged reliance on aborted fetal cells in development and/or manufacturing of vaccines began in 2020, after she learned "how severe the system is" and was

3

not "one aborted, you know miscarried fetus." [*Id.* at ¶ 23]. She testified she was opposed to the alleged way in which the fetal cells were procured. [*Id.* at ¶ 24].

Ms. Anastos alleges that her religious beliefs prevent her from receiving the vaccine because the vaccine would inject substances that "are completely foreign to God's creation," and that "it's almost blasphemous to put something like that in [her] body." [*Id.* at ¶ 29]. In the past, Ms. Anastos received vaccines and the last flu vaccine she received was in December 2018. [*Id.* at ¶ 19].

Ms. Anastos included a letter from her religious leader with her religious exemption request. [*Id.* at ¶ 30]. Ms. Anastos first requested Friar McManus of St. Mary's Church in Mansfield, Massachusetts for a letter in support of her religious exemption request, but the friar was instructed by the bishop not to provide the letter. [*Id.* at ¶ 32]. Plaintiff then asked Reverend Timothy Hynes of St. Mary's Parish in Foxboro, Massachusetts to provide a letter in support of her request for a religious exemption. [*Id.* at ¶ 33]. Reverend Hynes' letter stated his support of Plaintiff's decision to not receive the COVID-19 vaccine because her "conscience[] was troubled by the morality of [her] cooperation with these COVID vaccines" due to the use of an "aborted 18-week-old fetal cell line HEK 293" in the vaccines' development. [*Id.* at ¶ 34]. Ms. Anastos testified she was "aware of the Pope's statement" that encouraged Catholics to get the vaccine, but that she did not believe that was the "Catholic Church's statement" based on her interpretation of Catholic teaching. [*Id.* at ¶ 35].

On October 13, 2021, BMC sent Ms. Anastos a letter notifying her that it was denying her request for a reasonable accommodation to the hospital's Policy. [*Id.* at ¶ 36]. Between August 2021 to November 2021, BMC did not grant any religious exemptions because it determined that permitting an employee to work unvaccinated posed an undue hardship on its

business by increasing the risk of COVID-19 transmission amongst staff and between staff and patients. [*Id.* at ¶ 37].

### B. Procedural History

Ms. Anastos filed a charge with the United States Equal Opportunity Commission (EEOC). [Doc. No. 1 at ¶ 5]. On August 31, 2022, the EEOC issued a right-to-sue notice in response. [*Id.*].

On November 18, 2022, Ms. Anastos filed a Complaint against BMC alleging religious discrimination in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) and M.G.L. c.151B. [*Id.* at 16-17]. On May 21, 2024, BMC moved for Summary Judgment on substantive grounds. [Doc. No. 30]. On May 23, 2024, Ms. Anastos filed a Motion to Strike material facts alleged by BMC relating to the CDC's recommendations on hospitals' responses to the COVID-19 pandemic and vaccine. [Doc. No. 31].

## II. LEGAL STANDARD

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

Generally, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990).

Once it has made the requisite showing, the burden shifts to the nonmovant to "present definite, competent evidence to rebut the motion" and demonstrate that a "trialworthy issue persists." *Vineberg v. Bissonnette*, 548 F.3d 50, 56 (1st Cir. 2008) (internal citations and quotations omitted). "'[T]he mere existence of a scintilla of evidence' is insufficient to defeat a properly supported motion for summary judgment." *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 18 (1st Cir. 2000) (quoting *Anderson*, 477 U.S. at 252).

### III.    ANALYSIS

#### A.  <u>Plaintiff's Motion to Strike</u>

Ms. Anastos seeks to strike Defendant's statements pertaining to the CDC's recommendations that vaccinations protect against the transmission and severity of COVID-19. Specifically, Ms. Anastos claims the below bolded statements are hearsay and should not be included in the record for summary judgment. The disputed statements are provided in the declaration by John Hickey, which includes:

> 11.    The hospital's decision to require employees to be vaccinated against COVID-19 was **based on the recommendation of the Center for Disease Control and Prevention ("CDC")** that vaccination was the best way to protect against severe illness, hospitalization, and death, and reduce the transmission of COVID-19.
>
> 12.    **Based on the recommendations of the CDC** and its own experience between January 31, 2020 and July 1, 2021, BMC knew that healthcare workers were more likely to contract COVID-19 than others because they faced significant exposure to the virus through infected patients and other healthcare staff.
>
> 13.    Importantly, **based on the recommendation of the CDC** and its own experience between January 31, 2020 and July 1, 2021, BMC knew that healthcare workers were at increased risk of infecting their patients, which included persons who were medically vulnerable to serious complications and death from the disease.
>
> 15.    At the time BMC implemented the Policy, **the CDC recommended vaccination as the best way to prevent COVID-19 infection and transmission of the virus**.

> 22. **Based on the recommendations from the CDC**, BMC determined that alternatives to the COVID-19 vaccines, such as masking, periodic testing, and social distancing, would not be as effective as the COVID-19 vaccine in reducing transmission. BMC also determined, from its experience between January 31, 2020 and July 31, 2021, that social distancing is not always practicable for staff and patients and testing is inadequate to reduce transmission because it may miss infections on days staff are not tested.

[Doc No. 30-2 at ¶¶ 11, 12, 13, 15, 22] [emphasis added].

Statements of hearsay are inadmissible and may not be considered on summary judgment. *Vazquez v. Lopez-Rosario*, 134 F.3d 28, 33 (1st Cir. 1998). Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Additionally, the First Circuit has held that statements "offered only for context", rather than for the truth of the matter asserted, are not hearsay under Federal Rule of Evidence 801(c). *United States v. Catano,* 65 F.3d 219, 225 (1st Cir.1995); *United States v. Murphy* 19 F.3d 1, 6 n.2 (1st Cir.1999).

Contrary to Ms. Anastos' assertion, Attorney Hickey's above statements were provided to demonstrate the information available that informed BMC's decision to implement the Immunization Policy. Attorney Hickey's statements were not made to prove the truth of the CDC's recommendations or the vaccine's efficacy; they simply demonstrate the context behind the Immunization Policy. Furthermore, rather than being inconsistent as Plaintiff asserts, Attorney Hickey's interrogatory responses, i.e. that BMC lacks knowledge sufficient to respond to if and how long COVID-19 vaccines protect a recipient against infection, support that the disputed statements were provided to demonstrate the effect on the reader. In other words, because Attorney Hickey provided these statements as merely an impetus for BMC's Policy, it follows that he is unable to speak on the scientific analysis of the vaccine's efficacy. Accordingly, the disputed statements are not hearsay under Fed. R. Evid. 801(c). Thus, the

disputed statements will remain part of the record for purposes of summary judgment. *See Gladu v. Correct Care Sols.*, 15-cv-00384, 2018 WL 881759 at *7 (D. Me. Feb. 14, 2018), aff'd 18-cv-1167, 2019 WL 10982435 (1st Cir. Aug. 30, 2019) (Evidence is relevant predominantly for non-hearsay purposes because it explains witness' reaction and further decisions afterward, rather than for the hearsay purpose of the truth of the matter asserted.).[2]

## B. Defendant's Motion for Summary Judgment

Title VII declares it an "unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion." 42 U.S.C. § 2000e-2(a).

The First Circuit applies a two-part framework in analyzing religious discrimination claims under Title VII.[3] "First, [a] plaintiff must make [her] prima facie case that a bona fide

---

[2] In her opposition to the Defendant's Motion for Summary Judgment, Ms. Anastos seeks to strike additional statements provided in the declaration by John Hickey.

> Between August 2021 to November 2021, BMC did not grant any religious exemptions because it determined that permitting an employee to work unvaccinated posed an undue hardship on its business by increasing the risk of COVID-19 transmission amongst staff and between staff and patients.

> Between August 2021 to November 2021, BMC did not grant any religious exemptions because it determined that permitting an employee to work unvaccinated posed an undue hardship on its business by increasing the risk of COVID-19 transmission amongst staff and between staff and patients.

[Doc No. 30-2 at ¶¶ 37-38]. Ms. Anastos did not move to strike the above statements in her original Motion to Strike, and as such should not be considered. Yet even if they were properly included in her Motion to Strike, the statements themselves are not inadmissible hearsay.

[3] The Supreme Judicial Court of Massachusetts applies federal anti-discrimination case law when construing M.G.L. c. 151B, so this Court considers federal case law to assess both claims. See *Noviello v. City of Boston*, 398 F.3d 76, 91 (1st Cir. 2005) (applying federal case law to Chapter 151B claim and citing *Wheatley v. Am. Tel. & Tel. Co.*, 418 Mass. 394 (1994)).

religious practice conflicts with an employment requirement and was the reason for the adverse employment action." *Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126,133 (1st Cir. 2004); *see also Lowe v. Mills*, 68 F.4th 706, 719 (1st Cir. 2023). Second, once the plaintiff establishes a prima facie case, "[T]he burden then shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship." *Cloutier*, 390 F.3d at 133.

Here, it is not necessary for the Court to decide whether Ms. Anastos has made her prima face case because, regardless of whether she has, the Defendant has met its burden to articulate an undue hardship in granting Ms. Anastos' accommodation.

Because Defendant did not offer a reasonable accommodation, it must prove that any accommodation for the plaintiff would have resulted in an undue hardship for the hospital. *Lowe v. Mills*, 86 F.4th 706, 719 (1st Cir.2023). Under Title VII, an undue hardship is established when "it would impose more than a de minimis cost on the employer" and "the burden is substantial in the overall context of an employer's business." *Cloutier*, 390 F.3d at 134; *Groff v. Dejoy*, 600 U.S. 447, 468 (2023). In conducting an undue hardship analysis, the court should consider direct economic costs as well as indirect costs related to health and safety. *Together Employees*, 537 F.Supp.3d at 435. Additionally, effects onto the reputation of the business can also constitute an undue hardship. *Cloutier*, 390 F.3d at 136; *see also Together Employees*, 537 F. Supp. 3d at 436.

Here, BMC has established that granting Ms. Anastos' accommodation would have resulted in undue hardship for the hospital. Ms. Anastos' work as an RN placed her in a particularly risky position to spread infection, as she was in-person and in close contact with vulnerable patients, their families, and other BMC staff. Allowing her to remain unvaccinated

would have increased the risk of spreading COVID-19 throughout the hospital and beyond. *See Antredu v. Massachusetts Department of Youth Services* F. Supp. 3d 1, 5 (concluding that accommodating plaintiff's request to remain unvaccinated is an undue hardship due as their close proximity to patients and staff placed clients and colleagues at a higher risk of COVID-19). Furthermore, increased risk of transmission "would impair the hospital's ability to provide adequate care to patients, increase the chance of legal liability, and taint the reputation of the hospital." [Doc. 29 at ¶ 28]. Therefore, if BMC allowed the accommodation, such accommodation would impede the BMC's ability to provide a safe environment for their already vulnerable patients, and negatively impact its reputation. Thus, BMC has established that granting Ms. Anastos' accommodation would have resulted in an undue hardship for the hospital.

Ms. Anastos questions the efficacy of COVID-19 vaccines and argues that BMC's undue hardship defense relies on the faulty premise that COVID-19 vaccines protect against infection and transmission of COVID-19.[4] These "questions" do not create a dispute of material facts.

---

[4] As noted in FN1, *supra*, Plaintiff did not dispute Defendant's Statement of Material Facts. Instead, Plaintiff filed a Statement of Disputed Facts as follows:

> 1. For how long, if at all, COVID-19 vaccines protect the recipient against infection with COVID-19. Defendant's Response to Request for Admissions No. 1; Defendant's Interrogatory Answers No. 3 and No. 4; Defendant's Response to Request for Production of Documents No. 6.
>
> 2. For how long, if at all, COVID-19 vaccines prevent the recipient from transmitting COVID-19. Defendant's Response to Request for Admissions No. 2; Defendant's Interrogatory Answers No. 3 and No. 5; Defendant's Response to Request for Production of Documents No. 6.
>
> 3. The absolute risk reduction of the COVID-19 vaccines, i.e. the reduction of the risk that a recipient would have a symptomatic positive test for COVID-19 after receiving the drug. Complaint, ¶13; Answer, ¶13.

See Doc. No. 32-1.

Plaintiff does not provide any contrary evidence which shows that COVID-19 vaccines do not protect the recipient from infection or that it does not help prevent the transmission of the virus to others. Additionally, the facts must be viewed from what was understood of the COVID-19 virus and the vaccines by the CDC in 2020-2021. BMC relied on the CDC's then recommendation that vaccination was the best way to prevent COVID-19 infection and transmission of the virus. Ms. Anastos has not provided sufficient support to demonstrate that such reliance and BMC's experience was unreasonable.[5] Thus, the Defendant has met their burden to establish that providing Ms. Anastos an accommodation, and therefore allowing her to remain unvaccinated, would have resulted in an undue hardship for BMC. Accordingly, there remains no dispute of material fact as to Defendant's liability.

**IV. CONCLUSION**

For the above reasons, Plaintiff's Motion to Strike is <u>DENIED</u> and Defendant's Motion for Summary Judgment is <u>GRANTED</u>.

SO ORDERED.

/s/ Myong J. Joun<br>United States District Judge

---

[5] In her opposition to Defendant's Motion for Summary Judgment, Ms. Anastos points to various documents including, the Food & Drug Administration's ("FDA") May 10, 2021 Letter Granting Emergency Use Authorization to Pfizer, and the FDA's response to a citizen petition published in August 2023, and an article by Karin M. Durant, Ashlyn Whitesell, and Kathy D. Dasse published in 2024. However, the 2023 FDA publication and the 2024 article were published after BMC's decision to implement the Policy and to deny Ms. Anastos' religious exemption request and are thus irrelevant. To the extent that Ms. Anastos relies on the May 2021 Letter, read as a whole, the letter lends support to Defendant's contention regarding the efficacy of the vaccine. Finally, Ms. Anastos points to paragraphs in her own Complaint to support her argument; however, Ms. Anastos "cannot successfully oppose a motion for summary judgment by resting upon mere allegations or denials of [her] pleading." *Garmon v. AMTRAK*, 844 F.3d 307, 313 (1st Cir. 2016).